IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY<br>as Personal Representative of the Estate of John<br>Lansdale, Jr.<br><br>      Plaintiff<br><br>      v.<br><br>UNITED STATES OF AMERICA<br><br>      Defendant | Case No.: 1:10-cv-00860 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

COMPLAINT AND DEMAND FOR JURY TRIAL

Branch Banking and Trust Company, Plaintiff, by its attorneys, Norman L. Smith, Lee H. Benedict and Fisher & Winner, LLP, sues Defendant, the United States of America, and for its Complaint states as follows:

Jurisdiction and Venue

1.　This is an action arising under the Internal Revenue Code of 1986, as amended and codified in Title 26 of the United States Code, for the refund and recovery of federal estate taxes erroneously and illegally assessed against and collected from Plaintiff by Defendant.

2.　Jurisdiction is conferred upon this Court by 28 U.S.C. §1346 (a)(1).

3.　Venue for this action lies with this Court pursuant to 28 U.S.C. §1391(e)(2), as a substantial part of the events giving rise to the Plaintiff's claim occurred, and a substantial part of the property that is the subject of this action is situated, in the judicial district of this Court.

Parties

4. Plaintiff is the personal representative of the estate of John Lansdale, Jr. (the "Estate"), duly appointed by the Register of Wills of Anne Arundel County, Maryland.

5. Defendant is the United States of America.

Background

6. John Lansdale, Jr. ("the Decedent") died on August 22, 2003, domiciled in Anne Arundel County.

7. On the date of his death, the Decedent owned two farms near Harwood, Anne Arundel County, the Essex Farm (390 acres +/-) and the Cherry Farm (150 acres +/-). The farms represented more than 80% of the value of the Estate.

8. On May 24, 2004, Plaintiff filed with the Internal Revenue Service ("IRS") an application on Form 4768 for an extension of time to pay estate taxes due with respect to the Estate (the "Application for Extension"). With the Application for Extension, Plaintiff filed an estate tax return on Form 706 (the "Estate Tax Return") reporting more than $2,000,000 in federal estate taxes due. These taxes were paid in two installments, in May and July of 2004, with funds primarily obtained from a loan to the Estate made by the Plaintiff.

9. On the Estate Tax Return, the Plaintiff reported the value of the Essex Farm at $3,000,000 and the value of the Cherry Farm at $1,950,000. Both values were based upon appraisals prepared in January of 2004. In an explanatory statement accompanying the Application for Extension, Plaintiff stated:

The Decedent's estate is predominantly illiquid, as 80% of the gross estate represents

valuable real estate [the two farms] that must be sold in order to raise sufficient cash to pay the U.S. Estate Tax liability. The Personal Representative is vigorously pursing such sale; but because of the nature of the property and its exceptional value, it is impossible to enter into a contract and close on it by the nine-month deadline for paying Estate Tax.

10. Beginning in August of 2004, Plaintiff offered the farms to the general public in sealed bid sales, subject to reserve. The sealed bid sales were advertised in the Annapolis Capital, Baltimore Sun and Washington Post newspapers.

11. On September 28, 2004, Plaintiff opened the eleven sealed bids received, consisting of three bids for each of the farms separately and five bids for both farms together. The high bids were $2,260,000 for the Essex Farm, $901,000 for the Cherry Farm, and $3,360,000 for both farms together. The Plaintiff judged these bids too low and exercised its reserved rights to reject all bids.

12. Concerned with the variation between the bids and appraised values of the farms, Plaintiff commissioned a study of the feasibility and costs of developing the Cherry Farm[1] and sought a second appraisal of both farms, informed by the feasibility study. The second appraisal set the value of the Essex Farm at $2,800,000 and that of the Cherry Farm at $1,075,000 – a total of $3,875,000 for both farms.

13. Plaintiff then invited the parties who had previously submitted sealed bids to increase their offers. On March 21, 2005 Plaintiff received a high bid of $2,700,000 for the Essex Farm, and Plaintiff subsequently received a bid of $1,600,000 for the Cherry Farm from the same party. Taken together, these prices totaled $4,300,000 – $425,000 more than the values determined in the second

---

[1] Since the Essex Farm is subject to an agriculture preservation easement, which limits and defines its development potential, Plaintiff deemed it unnecessary to commission a development feasibility study of that farm.

appraisal, but $650,000 less than the combined values of the farms reported on the Estate Tax Return. Plaintiff accepted these high bids and signed separate contracts for the sale of the farms on May 5 and June 6, 2005.

14. Both farms were acquired by the same purchaser in simultaneous, bona fide, arms length transactions that closed on January 12, 2006.

15. On or about May 9, 2006, Plaintiff filed an amended federal estate tax return reporting the values of the farms at their contract prices, claiming certain increased estate administration expenses as deductions, and reporting a $418,143 overpayment of estate taxes. By Form 843 dated May 10, 2006, Plaintiff filed a claim for a $418,143.69 estate tax refund.

16. By letter dated March 17, 2008, the IRS disallowed the claimed refund based on the sales prices of the farms.[2]

17. Plaintiff appealed the disallowance of the full claimed refund to the IRS Appeals Office by a written protest dated April 30, 2008. By letter dated July 28, 2009, the Appeals Office rejected the appeal.

### The Farms' Erroneous Overvaluation

18. The farms are unique properties. Due to the farms' size, their location near major metropolitan areas, and the uncertain costs and complexity of development, the values of the farms reflected in the first set of appraisals relied upon by Plaintiff in preparing the initial Estate Tax Return were necessarily speculative and of uncertain accuracy. The problems with valuing the farms, however,

---

[2] The IRS agreed to refund $141,510 due to the increase in estate administration expenses.

were foreseeable on the day the Decedent died.

19.     From the date of the Decedent's death until the dates the Plaintiffs accepted the high bids for the farms, the market for developable agricultural real estate in the vicinity of the farms was rising slowly.  During the same period, there were no unforeseen events – changes to the farms, to the regulatory environment, or to the general economy – that adversely affected the value of the farms.

20.     In light of the history of the bidding on the farms, the underlying real estate market, and the lengthy period of time that the farms remained on the market before acceptable offers were received, the high bids accepted by Plaintiff for the farms represent the most accurate reflection of the farms true value on the date of the Decedent's death.

21.     The failure of the Defendant to accept the contract prices for the farms as the most persuasive evidence of their date of death values and its refusal to grant Plaintiff the full amount of the claimed estate tax refund were erroneous and illegal.

22.     Plaintiff is entitled to a refund in the amount requested and interest upon the amount of its refund under 26 U.S.C. §6611.

WHEREFORE, Plaintiff, Branch Banking and Trust Company, as personal representative of the estate of John Lansdale, Jr., requests judgment against Defendant, the United States of America, in the amount of $418,143.69 or such greater amount as the Court determines to be legally refundable, plus interest thereon, and such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to 28 U.S.C. §2402, Plaintiff Branch Banking and Trust Company demands a trial by

jury on all issues in this case.

                                        Respectfully submitted,


                                          _____/s/_____  
                                          Norman L. Smith (Federal Bar No. 24057)  
                                          email: nlsmith@fisherwinner.com  
                                          Lee H. Benedict (Federal Bar No. 26935)  
                                          email: leeb@fisherwinner.com  
                                          Fisher & Winner, LLP  
                                          2002 Clipper Park Drive, Suite 108  
                                          Baltimore, MD  21211  
                                          (410) 554-3600 (voice)  
                                          (410) 554-3636 (fax)  
                                          Attorneys for Plaintiff Branch Banking and Trust Company